1   DANIEL T. HAYWARD, ESQ.
Nevada State Bar No. 5986
2   LAXALT & NOMURA, LTD.
9600 Gateway Drive
3   Reno, Nevada 89521
dhayward@laxalt-nomura.com
4   Telephone: (775) 322-1170
Facsimile: (775) 322-1865
5

6            UNITED STATES DISTRICT COURT

7               DISTRICT OF NEVADA

8   DAVID LEAR and SANDRA L.        Case No. 3:07-cv-00176-BES-VPC
LEAR, Husband and Wife,
9

10         Plaintiffs,

     v.

11

12   MARI TIERNEY a/k/a MARIE
TIERNEY, an individual; THE
13   COMMERCE GUILD, INC., a Nevada
corporation; CREATIVE
14   MARKETING SOLUTIONS, INC., a
Nevada corporation; DALE R.
15   HARELIK, an individual; GARY
LASATER, an individual; HARELIK
16   DIVERSIFIED INTERESTS, INC., a
Nevada corporation; TELETRADE
17   INTERNATIONAL, INC., a Nevada
corporation; DOES 1 through 10,
18   inclusive; and ROE CORPORATIONS
1 through 10, inclusive,
19

20         Defendants.

21      _____/

**MOTION TO DISMISS OF
DEFENDANTS DALE R. HARELIK,
GARY LASATER, HARELIK
DIVERSIFIED INTERESTS, INC.,
AND TELETRADE INT'L, INC.
PURSUANT TO FRCP 12(b)(6),
FRCP 12(e), FRCP 9(b), AND
15 U.S.C. § 78u-4(b)**

22      Defendants, DALE R. HARELIK, GARY LASATER, HARELIK DIVERSIFIED

23 INTERESTS, INC. ("HDI"), and TELETRADE INTERNATIONAL, INC. ("Teletrade"), by and

24 through their counsel, LAXALT & NOMURA, LTD., move the Court for its order dismissing

25 Plaintiffs' Complaint on file herein without leave to replead, and for such other and further relief

26 as the Court deems appropriate. This motion is based upon FRCP 12(b)(6), FRCP 12(e), FRCP

27

28

1  9(b), 15 U.S.C. § 78u-4(b), the pleadings and papers on file herein, and the following

2  memorandum of points and authorities.[1]

3      DATED this 5th day of June, 2007.

4

5                                              LAXALT & NOMURA, LTD

6                          By:   _____

7                                              Daniel T. Hayward, Esq.
                                               Nevada State Bar No. 5986
8                                              9600 Gateway Drive
                                               Reno, Nevada 89521
9                                              Tel: (775) 322-1170
                                               Fax: (775) 322-1865
10                                             Attorneys for Defendants

11

12                              **INTRODUCTION**

13      Plaintiffs David and Sandra Lear have filed what can only be described as a rambling,

14  angry litany of unsupported, conclusory allegations, replete with gratuitous personal insults and

15  multiple prayers for an eight-figure damage award, all of which is based on a $250,000

16  convertible note to which only <u>one</u> of the numerous Defendants is even a party.  When all of the

17  fantastic, speculative argument is stripped away, it becomes evident that Plaintiffs' complaint is

18  devoid of the factual allegations required to survive scrutiny under FRCP 12(b)(6), and is in clear

19

20  violation of FRCP 8(a) and (e), FRCP 9(b), and 15 U.S.C. § 78u-4(b).

21      Notably *absent* from Plaintiff's 38-page complaint is any allegation describing the

22  material terms of the operative convertible note between Creative Marketing Solutions, Inc.

23  (hereinafter, "CMS") and the David R. Lear and Sandra L. Lear Family Trust (hereinafter, the

24

25

26  [1]     Defendants Mari Tierney, The Commerce Guild, Inc. ("TCG") and Creative Marketing Solutions,
       Inc. ("CMS") filed a separate motion to dismiss on May 21, 2007.  Defendants Harelik, Lasater, HDI and
27  Teletrade are filing this separate motion because the allegations them appear to be even more remote and
       tangential than those against their co-defendants.
28

1  "Lear Family Trust") which supposedly gave rise to all of this.  Accordingly, Defendants ask this

2  Court to consider the terms of note, which is attached hereto as Exhibit A along with the

3  authenticating affidavit of CMS's sole shareholder and CEO, Mari Tierney.[2]

4                                                              **ARGUMENT**

5  **A.        LEGAL STANDARD**

6          As explained by this Court in one of its most recent pronouncements on the subject:

7
8          Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a court may dismiss a
           complaint for "failure to state a claim upon which relief can be granted." "[A] complaint
9          should not be dismissed for failure to state a claim unless it appears beyond doubt that the
           plaintiff can prove no set of facts in support of his claim which would entitle him to
10         relief." *Yamaguchi v. U.S. Dept. of the Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997)
           (citation omitted).  All factual allegations set forth in the complaint "are taken as true and
11         construed in the light most favorable to [p]laintiffs."  *Epstein v. Wash. Energy Co.*, 83
           F.3d 1136, 1140 (9th Cir. 1999).  Although courts assume the facts alleged as true, courts
12         do not "assume the truth of legal conclusions merely because they are cast in the form of
           factual allegation."  *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).
13         Dismissal is appropriate "only if it is clear that no relief could be granted under any set of
           facts that could be proven consistent with the allegations."  *McGlinchy v. Shell Chem. Co.*,
14         845 F.2d 802, 810 (9th Cir. 1988) (citation omitted).

15
16  *Artist Hous. Holdings, Inc. v. Davi Skin, Inc.*, 2007 U.S. Dist. LEXIS 25345, *2-3 (D. Nev.

17  2007).  When reading Plaintiffs' highly argumentative pleading in this case, it is important to

18  bear in mind that "the court is not required to accept legal conclusions cast in the form of factual

19  allegations if those conclusions cannot reasonably be drawn from the facts alleged."

20

21

22  _____

23  [2]      The Court may consider documents attached to the complaint, documents incorporated by
    reference in the complaint, or matters of judicial notice without converting the motion to dismiss into a

24  motion for summary judgment.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); see also *Van
    Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

25  "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint
    if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's

26  claim."  *Ritchie*, 342 F.3d at 908.   "If a plaintiff fails to attach to the complaint the documents on which it
    is based, defendant may attach to a Rule 12(b)(6) motion the documents referred to in the complaint to

27  show that they do not support plaintiff's claim."  *In re Silicon Storage Tech, Inc., Sec. Litig.*, 2007 U.S.
    Dist. LEXIS 21953 (N.D. Cal. 2007), citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir.

28  2001).

*Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994), citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

**B.** **Plaintiff's allegations of fraud and violations of federal and state securities laws and regulations are so disconnected, incomplete and confusing that dismissal is mandated by FRCP 8(a) and (e), FRCP 9(b), and 15 U.S.C. § 78u-4(b).**

Plaintiffs' federal securities claims are governed by both FRCP 9(b) and Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b)(3)(A). FRCP 9(b) requires Plaintiffs to allege specific facts regarding the fraudulent activity, such as the time, date, place, and content of the alleged fraudulent representation, how or why the representation was false or misleading, and in some cases, the identity of the person engaged in the fraud. *Thorne v. Wagner*, 2007 U.S. District LEXIS 10750, 8-9 (D. Nev. 2007). "Because the plaintiff must set forth what is false or misleading about a particular statement, he must do more than simply allege the neutral facts necessary to identify the transaction; he must also explain why the disputed statement was untrue or misleading at the time it was made." *In re Silicon Storage Tech, Inc.,* 2007 U.S. District LEXIS 21953 at 12-13 (N.D. Cal. 2007), citing *Yourish v. California Amplifier*, 191 F.3d 983, 992-93 (9th Cir. 1999). The PSLRA was enacted in order to "establish uniform and stringent pleading requirements for securities fraud actions, and to put an end to the practice of pleading 'fraud by hindsight.'" *Id.* at 12-13, citing *In re Silicon Graphics*, 183 F.3d at 988. "The PSLRA heightened the pleading requirements in private securities fraud litigation by requiring that the complaint plead both falsity and scienter with particularity." *Id.* at 12-13, citing *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1084 (9th Cir. 2002). "If the complaint does not satisfy these pleading requirements, the court, upon motion of the defendant, must dismiss the complaint." *Id.* at 12-13 (emphasis supplied), citing 15 U.S.C. § 78u-4(b)(3)(A).

Plaintiffs' allegations of securities fraud against the moving Defendants are impermissibly general in nature, constitute mere conclusions without supporting allegations of

LAXALT & NOMURA.
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

4

fact, fail to support any claim for relief.  At page 2, paragraph C of the complaint, Plaintiffs allege that they entered into an investment pursuant to "express instructions from and guidance by Defendant TIERNEY, and only after having personal contact with Defendants and/or their duly authorized and appointed agents ...."  Of course, merely having "personal contact" with the moving Defendants is not actionable.  Plaintiff then contends at page 3 that Harelik (but not Lasater, HDI or Teletrade) was involved in devising some type of vague "scam", and that "Defendants" failed to deliver securities to Plaintiffs.  Absent from this conclusory allegation is the fact that Plaintiffs' only contract of any sort was with CMS, not the rest of the Defendants, and even CMS's duty to pay back the loan has not yet come to pass.  (See Ex. A, attached)

Plaintiffs then contend at the bottom of page 3 of their complaint that Tierney told them that Harelik was a CPA, which they then claim was false.  Not only is there no evidence this alleged misrepresentation was material, there is no allegation that Harelik was even aware of it.

Page 4, paragraph D, is virtually incomprehensible.  Plaintiffs seem to be vaguely alleging that Harelik and, "upon information and belief", Lasater, were involved in all financial transactions involving the TCG "scheme", and jointly benefited therefrom.  What Plaintiffs never explain is what exactly the moving Defendants did which allegedly violates federal or state securities laws.  The "security" is apparently the convertible note between the Lear Family Trust and CMS.  (See Ex. A)  Harelik, Lasater, HDI and Teletrade are not parties to the agreement, and in any event the agreement does not place any restrictions on what CMS may do with the $250,000 in borrowed funds prior to the repayment date of September 30, 2011.

At page 6 of the complaint we see the first and only allegations directed at HDI and Teletrade:  That "[u]pon information and belief" these companies were used by Tierney and Harelik to "perpetuate and further the acts and conduct described herein ...."  Of course, how these companies were "used" to perpetuate and further this amorphous "conduct" is a complete mystery.  Page 6 also includes the impermissibly vague allegation that Harelik "distributed false

LAXALT & NOMURA,
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

5

and misleading information to Plaintiffs" regarding the "business and business plan(s)" and set up "Defendant business entities to mislead Plaintiffs" and induce them to invest. Again, Plaintiffs do not state what false information Harelik provided, or how the setting up of one or more unnamed "business entities" induced Plaintiffs to invest with CMS.

Page 6 through 10 of the complaint are exclusively directed at representations supposedly made by Tierney, who has filed a separate motion to dismiss. Plaintiffs' scattered references to Defendants' "scheme" are not supported by allegations of fact bringing these conclusory, factually-barren allegations within the purview of federal or state securities laws.

After setting forth the foregoing general, vague, allegations of "schemes" by the "Defendants", Plaintiffs next allege on page 10 in their First Cause of Action that "Defendants, by the use and means of instrumentalities of interstate commerce and of the mails" committed various "acts". Those "acts" are nothing more than conclusory recitations of statutory prohibitions without any factual support whatsoever. Plaintiffs then contend that the moving Defendants --- who were not parties to the convertible note between CMS and the Lear Family Trust --- had a duty to "disclose" that they would benefit financially from the alleged vague "TCG scheme", and that they would allegedly use monies received from Plaintiffs to pay "debts and obligations of Defendants" and "purchase assets for their own personal use." What they purchased, when, and where is left to speculation.

Still more general, vague allegations follow at pages 11 through 16. Plaintiffs contend that "Defendants" --- without specifying who, when, where, or precisely what was said --- made various misrepresentation and failed to discuss certain matters to Plaintiffs. Not only are these allegations imprecise and impossible to respond to, they fail to take into account the fact that the convertible note simply provides that the Lear Family Trust loaned CMS $250,000, and CMS must pay it back on a future date certain. (See Ex. A) Plaintiffs plethora of allegations about where the money was sent, how it was supposedly used, Defendants' inability to make their

businesses prosper, and so forth are completely irrelevant. The language of Exhibit A reveals that there is no present duty to repay the $250,000, and no duty to deliver a security to Plaintiffs because they have not yet made a proper demand to convert the repayment obligation into shares of stock in CMS.

Defendants are at a loss to decipher the connection between the fact that CMS has not yet repaid the Lear Family Trust's $250,000 loan --- which is not due to be repaid until September 30, 2011 --- and alleged "securities fraud". Neither Defendants nor the Court are required to puzzle together the elements of Plaintiffs' alleged securities fraud case, nor are they required to ascertain which federal or state securities statute or regulation Plaintiffs purport to sue under with respect to each such allegation. Plaintiffs have failed to identify the requisite elements of these causes of action with respect to each alleged fraudulent statement, and therefore their claims must be dismissed pursuant to FRCP 12(b)(6), FRCP 9(b) and 15 U.S.C. § 78u-4(b)(3)(A). In the alternative, Plaintiffs should be ordered pursuant to FRCP 12(e) to set forth an understandable, cogent description of the theories and facts they intend to allege.

Recent securities decisions demonstrate a trend toward enforcing the requirement of clear, specific allegations of fact:

> "In short, plaintiffs have left it up to defendants and the court to try to figure out exactly what the misleading statements are, and to match the statements up with the reasons they are false or misleading." *In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 841 (N.D. Cal. 2000). "The predictable demands of reviewing such a complaint abuse judicial resources. 'When attorneys admitted to practice in Federal courts prepare complaints, neither the Court nor opposing counsel should be required to expend time and effort searching through large masses of conclusory, argumentative, evidentiary and other extraneous allegations in order to discover whether the essentials of claims asserted can be found in such a melange.'" *Wenger*, 2 F. Supp. 2d at 1243-44 (quoting *Silver v. Queen's Hospital*, 53 F.R.D. 223, 226 (D.Haw. 1971)). "'It is the duty and responsibility, especially of experienced counsel, to state those essentials in short, plain, and non-redundant allegations.'" 2 F. Supp. 2d at 1244 (quoting *Silver*, 53 F.R.D. at 226).
>
> * * *
>
> The Court finds that plaintiffs have failed to set forth a "short and plain" statement of their claims in violation of Rule 8(a) and have failed to make each allegation "simple, concise and direct" in violation of Rule 8(e). Moreover in contravention of the PSLRA, plaintiffs have failed to craft a complaint in such a way that a reader can, without undue

LAXALT & NOMURA.
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

7

1
2
3
4

> effort, divine precisely which statements (or portions of statements) are alleged to be false or misleading, and the reason or reasons why each statement is false or misleading. The Court therefore GRANTS the Splash defendants' motion to dismiss the SAC in its entirety. Given plaintiffs' failure in three successive attempts to satisfy the pleading requirements of Rule 8 and the PSLRA, and based upon other deficiencies set forth below, the Court finds that further amendment would be futile. Accordingly, the Second Amended Complaint hereby is dismissed with prejudice.

5
6
7
8
9

*In re Splash Tech. Holding Secs. Litig.*, 160 F. Supp. 2d 1059, 1074-75 (N.D. Cal. 2001). See also *In re Silicone Storage Tech, Inc.,* 2007 U.S. District LEXIS 21953 at 32 ("District courts in the Ninth Circuit have repeatedly chastised plaintiffs in securities fraud suits for this kind of 'puzzle-style' pleading").

10   **C.      Each of Plaintiff's 16 enumerated claims is subject to dismissal by this Court.**

11            **1/4.    Securities fraud.[3]**

12

13            In the First and Fourth Causes of Action, Plaintiffs allege that Defendants have

14   committed securities fraud. Specifically, in the First Cause of Action, Plaintiffs allege violations

15   of the Securities Act of 1933, the Securities Exchange Act of 1934, Section 10(b) and Rules 10b-

16   3 and 10b-5 of the General Rules and Regulations as promulgated by the SEC, 15 U.S.C. § 78j

17   and the rules and regulations of the Nevada State Securities Division. In the Fourth Cause of

18   Action, Plaintiffs allege violations of Sections 5 and 12 of the Securities Act of 1933, the

19   Securities Exchange Act of 1934, Rules 10b-3 and 10b-5 of the SEC, 15 U.S.C. § 78j; Rules of

20   the NASD and Nevada state securities laws including Chapter 90.[4]

21
22
23
24

[3]      The numeric references under the Section B heading track the number of Plaintiffs' various claims. "1/4" refers to claims number 1 and 4 in Plaintiffs' complaint.

25
26

[4]      Rule 10b-3 (17 C.F.R. 240.10b-3) prohibits deceptive or fraudulent conduct by any "broker or dealer," and is clearly not implicated by limited private transaction such as this. Further, although it is unclear what specific provision of Nevada's state securities laws Plaintiffs allege Defendants have violated, the fact is that after Plaintiffs' RICO and federal securities claims have been dismissed, this Court should dismiss the entire case for want of subject matter jurisdiction. 28 U.S.C. 1331.

27
28

LAXALT & NOMURA,
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

1   At the outset, Defendants must point out that the $250,000 note is strictly between <u>CMS</u>

2   and the <u>Lear Family Trust</u>.[5]  Accordingly, before proceeding further in its analysis, the Court

3   should resolve to dismiss the First and Fourth Causes of Action as against each of the moving

4   Defendants Harelik, Lasater, HDI and Teletrade, <u>none of which is even a party to the alleged</u>

5   <u>transaction.</u>

6       Further, in order to compel <u>CMS</u> to convert the note repayment obligation to CMS

7   common stock, the Lear Family Trust was expressly required by Section 2.d of the note to

8   <u>deliver</u> it to CMS.  (<u>See</u> Ex. A)  Plaintiffs have failed to allege that the Lear Family Trust has

9   satisfied this express condition precedent.  Therefore, they are unable as a matter of basic

10  contract interpretation to establish that an obligation to issue certificates evidencing shares of

11  common stock has arisen, presuming that Plaintiffs can somehow establish that parties <u>other than</u>

12  <u>CMS</u> had a duty to "issue" CMS stock.  Absent an obligation to convert the repayment

13  obligation to stock, the note does not become due until September 30, 2011.  (Ex. A, sec. 1)

14  

15

16              **a.     Under the plain language of the note and SEC Rule 144,**
                         **this transaction is exempt from the Securities Act of 1933.**

17      The complaint contains a great deal of vitriol directed at Defendants, but what it does not

18  contain is a viable claim for relief under the federal securities statutes.  "[T]he mere fact that

19  securities are <u>involved</u> does not convert a state claim into a basis for federal jurisdiction." *Dopp*

20  *v. Franklin National Bank*, 374 F. Supp. 904, 910 (S.D.N.Y. 1974) (emphasis supplied).

21      It is undisputed that the Lear Family Trust invested $250,000 in CMS on or about

22  September 25, 2006, memorialized by a convertible note issued by CMS.  (Ex. A)  This note

23  bears the signatures of Plaintiffs David and Sandra Lear on behalf of the Lear Family Trust, and

24  Defendant Mari Tierney on behalf of CMS. (Ex. A, p. 4)  It has a due date of <u>September 30,</u>

25  <u>2011</u> for payment of the outstanding principle balance and any interest owing.  (Ex. A, sec. 1)

26

27

28  [5]     Plaintiffs have not alleged that they are the trustees of the Lear Family Trust, therefore have
standing to sue on its behalf.

LAXALT & NOMURA,
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

1     Section 2 of the note governs the right of the note holder, the Lear Family Trust, to

2   convert the note into "shares of Creative Marketing Solutions, Inc. common stock equivalent to

3   5% ownership as of the date of this Agreement." (Ex. A, sec. 2.a and 2.c)  Section 5 of the note

4   specifically states:

5
6           5.      Representations and Warranties of the Holder.  The Holder represents and
        warrants to the Company as follows:

7           (a)     Investment Intent.  The Holder is acquiring this Convertible Note
        and any securities acquired hereunder for investment for the Holder's own
8       account and may resell to anyone, or assign any distribution thereof to members
        of "Holder."  **The holder understands that the Securities have not been, and**
9       **will not be, registered under the Securities Act of 1933, as amended (the**
10      **"Act").  The Holder understands that the Securities have not been registered**
        **under the Act by reason of a specific exemption from the registration**
11      **provisions of the Act that depends upon, among other things, the bona fide**
        **nature of the investment intent as expressed herein.**  The Holder understands
12      and agrees that the Securities shall not be sold, pledged, hypothecated or
        otherwise transferred unless registered under the Act and applicable state
13      securities laws or an exemption from registration is available and that each
        certificate or other document evidencing or representing the Securities shall be
14      stamped or otherwise imprinted with a legend in substantially the following form:
15
16      THE SECURITIES OF THE COMPANY EVIDENCED BY THE
        CERTIFICATE **HAVE NOT BEEN REGISTERED WITH THE**
17      **SECURITIES AND EXCHANGE COMMISSION OR THE SECURITIES**
        **COMMISSION OF ANY STATE IN RELIANCE UPON EXEMPTIONS**
18      **FROM THE REGISTRATION STATE SECURITIES LAWS**.  THESE
        SECURITIES MAY NOT BE SOLD, TRANSFERRED, PLEDGED OR
19      ASSIGNED OR A SECURITY INTEREST CREATED THEREIN, UNLESS
        THE PURCHASER, TRANSFEREE, ASSIGNEE, PLEDGEE OR HOLDER OF
20      SUCH SECURITY INTEREST COMPLIES WITH ALL STATE AND
        FEDERAL SECURITIES LAWS (I.E., SUCH SHARES ARE REGISTERED
21      UNDER SUCH LAWS OR AN EXEMPTION FROM REGISTRATION IS
        AVAILABLE THEREUNDER) AND UNLESS THE SELLER, TRANSFEROR,
22      ASSIGNOR, PLEDGOR OR GRANTOR OF SUCH SECURITY INTEREST
        PROVIDES AN OPINION OF COUNSEL REASONABLY SATISFACTORY
23      TO THE COMPANY THAT THE TRANSACTION CONTEMPLATED
        WOULD NOT BE IN VIOLATION OF THE SECURITIES ACT OF 1933, AS
24      AMENDED, OR ANY APPLICABLE STATE SECURITIES LAWS.
25
26          (b)     Rule 144.  **The Holder acknowledges that the Securities must**
        **be held indefinitely unless subsequently registered under the Act, or unless**
27      **an exemption from such registration is available.  The Holder is aware of the**
        **provisions of Rules 144 and 144A promulgated under the Act that permit**
28      **limited resale of securities purchased in a private placement subject to the**

**satisfaction of certain conditions**, including, among other things, in most circumstances (i) the availability of certain current public information about the Company, (ii) the resale occurring not less than one (1) year after a party has purchased and fully paid for the shares, (iii) the sale being effected through a "broker's transaction" or in the transactions directly with a "market Maker" (as provided by Rule 144(f)), and (iv) the number of shares being sold during any three month period not exceeding specified limitations.

\* \* \*

(d)     Speculative Investments. **The Holder is aware that an investment in the Securities is highly speculative and subject to substantial risks.** The Holder has adequate means of providing for its current needs and possible contingencies, and is able to bear the high degree of economic risk of the investment, including, but not limited to, **the possibility of the complete loss of the Holder's entire investment**, and the limited transferability of the Securities, which may make the liquidation of this investment impossible for the indefinite future. ...

(Ex. A, emphasis supplied)

Thus, the contract entered into between the Lear Family Trust and CMS specifically provides that any securities obtained from the conversion of the note are not registered and are instead subject to SEC Rule 144. Rule 144, promulgated by the SEC under the 1933 Act, permits the sale of restricted and controlled securities, without registration, under limited circumstances. Rule 144(a) (3) designates several categories of securities as "restricted securities" which are exempt from the 1993 Act, including one category --- Rule 144 (a) (3) (i) --- which applies here: "Securities that are acquired directly or indirectly from the issuer, or from an affiliate of the issuer, in a transaction or chain of transactions not involving any public offering." Plaintiffs have not alleged a "public offering", but rather have alleged facts supporting an isolated transaction between CMS and the Lears. Accordingly, Plaintiffs alleged claim under the 1933 Act fails as a matter of law.

> **b.     Both the alleged "security" and the alleged "transaction" are exempt from the Securities Act of 1933 for additional reasons.**

Setting aside the issue of the Rule 144 exemption, the 1933 Act does not apply because (1) the Convertible Note was a purely intrastate offering and (2) the investment was not a public offering.

LAXALT & NOMURA,
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

1
## 1.      The 1933 Act does not apply to purely intrastate offerings.

2      Plaintiffs have alleged that they entered into an "investment contract" for $250,000 with

3   Defendants TCG and/or CMS. (Complaint, p.3, para. C.i)[6] According to Plaintiffs, this

4   investment contract constitutes a "security" under the 1933 Act.  Yet even presuming this is true,

5   the fact remains that the transaction was purely intrastate and therefore the 1933 Act does not

6   apply.  Further, the transaction, on its face, did not involve the moving Defendants.

7
8      15 U.S.C. § 77c(a)(11) (section 3(a)(11) of the 1933 Act) provides "that the provisions of

9   the 1933 Act do not apply to securities sold intrastate." *Matek v. Murat*, 862 F.2d 720, 731 n.17

10  (9th Cir. 1988).  Section 3(a)(11) provides:

11         Any security which is a part of an issue offered and sold only to persons resident
           within a single State or Territory, where the issuer of such security is a person
12         resident and doing business within or, if a corporation, incorporated by and doing
           business within, such State or Territory.
13

14  15 U.S.C. § 77c(a)(11).

15      The complaint states that the Plaintiffs are both residents of the State of Nevada.

16  (Complaint, p. 2, para. B)  Plaintiffs allege that TCG is a Nevada corporation.  (*Id.*, p. 2, para.

17  A)  Although Plaintiffs fail to allege it, CMS is a Nevada corporation.  (Aff. of CMS's CEO,

18  Mari Tierney, attached)  Thus, according to Plaintiffs' own allegations, the investment contract --

19
20  - the alleged "security" --- was sold only to Nevada residents by an issuer, CMS, which was also

21  a Nevada resident.  Accordingly, under Section 3(a)(11), the 1933 Act does not apply because

22  the transaction is purely intrastate.

23

24

25

26

27   [6]      Obviously, TCG is not a party to the convertible note.  How Plaintiffs could allege otherwise is
    puzzling, to put it mildly.  (See Ex. A)  Equally confusing are Plaintiffs' repeated references to "TCG
28  securities," when in fact the note provides only for potential conversion into CMS stock.  (*Id.*, sec. 2)

LAXALT & NOMURA,
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

## 2.     The 1933 Act does not apply to private offerings.

The 1933 Act, 15 U.S.C. § 77a *et seq.*, "was designed to provide investors with full disclosure of material information concerning public offerings of securities in commerce ..." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 195 (1976) (emphasis added). 15 U.S.C. § 77d exempts certain transactions from Section 5 of the 1933 Act.[7] 15 U.S.C. § 77d(2) (section 4(a)(2) of the 1933 Act) exempts "transactions by an issuer not involving any public offering."

The Supreme Court case of *S.E.C. v. Ralston Purina Co.*, 346 U.S. 119 (1953), provides a framework for analyzing whether an offering is private or public. See *West v. Innotrac Corp.*, 463 F. Supp. 2d 1169, 1175 (D. Nev. 2006) (analyzing public versus private offerings). Under *Ralston Purina*, whether an offering is public or private turns on whether the particular class of persons affected needs the protection of the Act. *Id.* at 126. Courts have developed flexible tests to determine whether a transaction involves a public offering. These tests focus on four factors: "(1) the number of offerees; (2) the sophistication of the offerees; (3) the size and manner of the offering; and (4) the relationship of the offerees to the issuer." *Western Fed. Corp. v. Erickson*, 739 F.2d 1439, 1442 (9th Cir. 1984).

In the present case, Plaintiffs have not pled the facts necessary to establish that this transaction rises to the level of a public offering. It is self-evident from the face of the note that there was only a single offeree, and there are no facts pled suggesting that the trustees of the Lear Family Trust were unsophisticated, or that the "offering" was relatively substantial in size, or

---

[7]     Section 5 of the 1933 Act provides that "[u]nless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly –

(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell or offer to buy such security through the use or medium of any prospectus or otherwise; or

(2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale."

15 U.S.C. § 77e(a). These prohibitions are actionable under Section 12 of the 1933 Act unless either the "security" or "transaction" is exempted.

that the relationship between the offerees and CMS was such that the transaction should be

regarded as a public offering.  The 1933 Act is not meant to protect a purely private transaction

like the present one.  Instead, it is meant to protect the general public during a public offering.

> ### c.  Plaintiffs' claim also fails to the extent it alleges a violation of the 1934 Act, including Section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and SEC Rules 10b-3 and 10b-5.

Plaintiffs' securities claims allege a general violation of Securities Exchange Act of 1934

and specifically Section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and SEC Rules 10b-3 and

10b-5.  To plead securities fraud under Section 10(b) of the 1934 Act, plaintiffs must allege (1) a

misstatement or omission (2) of material fact (3) made with scienter (4) on which plaintiffs relied

(5) which proximately caused the plaintiffs' injury.  *DSAM Global Value Fund v. Altris Software,*

*Inc.*, 288 F.3d 385, 388 (9th Cir. 2002).  To plead a claim under Rule 10b-5, Plaintiffs must plead

and prove (1) a material misrepresentation (2) made with scienter (3) in connection with the

purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss.  *In re*

*Daou Sys., Inc., Sec. Litig.*, 411 F.3d 1006, 1014 (9th Cir. 2005).

To the extent the Court allows Plaintiff to move forward with their complaint, as pled, it

is subject to dismissal based upon the failure to allege an actionable misrepresentation.

Essentially, Plaintiffs appear to generally allege that "Defendants" promised them large returns

on the Lear Family Trust's $250,000 "safe" and "secure" investment, and that the monies would

somehow be used to advance a proprietary "money transfer technology" known as the "TCG

Business Suite." (Complaint, *passim*)  Yet they have utterly failed to allege specifically what

these moving Defendants supposedly communicated to them, when, through what means, and

why it was material.  Further, these alleged oral statements are contradicted by the express

notification in the convertible note that the investment was "highly speculative" and "subject to

substantial risks." (There is even a section heading entitled "Speculative Investment". (Ex. A,

sec. 5.d)  They are also contradicted by the fact that the note does not promise large returns --- or

14

1    any returns at all.  It promises repayment on September 30, 2011 with "8% per annum interest"

2    or conversion to CMS common stock.  (Ex. A)

3         The alleged oral sales pitch is simply not actionable under federal securities laws and

4    regulations.  As explained by the United States District Court for the Northern District of

5    California on March 9, 2007:

6
         [C][ourts have routinely held that vague or amorphous statements of optimism and
7        "puffing" about a company or a product are not actionable.  See, e.g., In re Stratosphere
         Corp. Sec. Litig., 66 F. Supp. 2d 1182, 1197-99 (D. Nev. 1999); Wenger v. Lumisys, Inc.,
8        2 F. Supp. 2d 1231, 1245 (N.D. Cal. 1998); In re Gupta Corp. Sec. Litig., 900 F. Supp.
9        1217, 1236 (N.D. Cal. 1994).  "Statements that fall within the rule tend to use terms that
         are not measurable and not tethered to facts that a reasonable person would deem
10       important to a securities investment decision."  In re Ligand Pharms., Inc. Sec. Litig.,
         2005 WL 2461151, at *19 (S.D. Cal., Sept. 27, 2005) (citation and quotation omitted).
11       Such vague statements cannot be said to "have been viewed by the reasonable investor as
         having significantly altered the 'total mix' of information made available."  TSC Indus.,
12       Inc. v. Northway, Inc., 426 U.S. 438, 449, 96 S. Ct. 2126, 48 L. Ed. 2d 757 (1976)
13       (citation omitted).

14   In re Silicon Storage Tech., Inc., Sec. Litig., 2007 U.S. Dist. LEXIS 21953, 62-63 (N.D. Cal.

15   2007).[8]

16
17        Between the clear and unambiguous language of the convertible note, and the

18   unactionable nature of Tierney's alleged representations during CMS's presentation to the Lear

19   Family Trust, and the failure to plead facts under which the moving Defendants would be

20   responsible for Tierney's alleged statements, it is clear that Plaintiffs have failed to meet the very

21   high pleading threshold presented by the applicable federal and state securities laws and

22   regulations.  Accordingly, these claims must be dismissed.

23
24        **2.     Common law fraud.**

25

26   _____
     [8]     Silicon Storage Tech, Inc., involved a suit by investors under Section 10(b) of the 1934 Act (15
     U.S.C. 78j(b), as well as Rule 10b-5 (17 C.F.R. 240.10b-5) and Section 20(a) of the Exchange Act (15
27   U.S.C. 78t(a)), in which they alleged that the company and controlling persons issued false reports in
     connection with the company's quarterly release of financial results.  The court dismissed the plaintiffs'
28   second amended complaint with prejudice due to failure to plead facts demonstrating that the alleged
     fraudulent statements were false and misleading.  Id., 2007 U.S. Dist. LEXIS 21953 at 96.

LAXALT & NOMURA,
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

1    Plaintiffs contend in their second claim for relief that "Defendant Tierney":

2         a.    "[C]oncealed the fact that the Plaintiffs' invested monies would be

3    transferred to and through various bank accounts to and for the financial benefit, directly or

4    indirectly, of Defendants TIERNEY, HARELIK and LASATER.  (Complaint, p. 20)

5         b.    "[C]oncealed her involvement in the fraudulent schemes and accounts

6    described in this Complaint ...."  (Complaint, p. 20)

7

8    Plaintiffs then claim that although Tierney is the only one alleged to have "concealed"

9    these facts, Defendants Tierney, Harelik and Lasater were under a duty to disclose "the material

10   facts that they would benefit financially from Plaintiffs' purchase of the TCG securities

11   purchased by Plaintiff, and that Defendants TIERNEY and HARELIK were engaging in the

12   courses of conduct described in this Complaint ...."  (Complaint, p. 20)  Plaintiffs allege that if

13   they had known "the truth about the conduct of Defendants TIERNEY, HARELIK and

14   LASATER, as described in this Complaint, they would not have purchased their TCG

15   securities," and as a result they have been damaged to the tune of at least $10 million (because

16   they "invested" $250,000).  (Complaint, p. 20)

17

18   Fraudulent concealment requires proof of:  (1) concealment or suppression of a material

19   fact; (2) a duty by the Defendants to disclose the fact to Plaintiffs; (3) intentional concealment of

20   the fact by Defendants with the intent to defraud Plaintiffs; (4) lack of awareness by Plaintiffs of

21   the concealed fact, and that Plaintiffs would not have acted as they did if they had known of the

22   concealed fact; and (5) damages as a result of the concealment of the fact.  Nev. Pattern Jury

23   Instr. 9.03.

24

25   Although it purports to be directed at "All Defendants", it is self-evident from the subject

26   convertible note attached as Exhibit A that the parties to the agreement were the Lear Family

27   Trust and CMS, not the moving Defendants.  Simply put, Harelik, Lasater, HDI and Teletrade

28   did not owe the Lears a "duty" to tell them anything at all, and Plaintiffs have not allegedly facts

supported a claim of common law fraud against them.  Accordingly, this claim should be dismissed.

Further, it is hopelessly unclear exactly what the "Defendants" --- whoever they are --- supposedly concealed.  FRCP 9(b) requires Plaintiffs to plead fraud with specificity.  Instead, they have incorporated by reference 19 pages of conclusory allegations, labeled the contents as "material facts", and declared that the Defendants had a duty to disclose these vague, unspecified facts.  (Complaint, p. 20)[9]  Apparently, the claim is that Defendants eventually did something inappropriate with the monies, and they should have told the Lear Family Trust in advance that they intended to do it.  Then, the Lears would have refused to invest based upon being told of future events that had not yet even occurred.  Of course, this is utter nonsense.  Obviously, one may not predicate a claim for nondisclosure of material "fact" upon failure to disclose events which have not yet occurred.  If one breaches a contract or tortiously injuries someone's interest, the remedy is an appropriate claim for that conduct --- not a claim for "fraudulently" not predicting and declaring that the alleged wrongful actor would one day commit the wrongful act.

### b.   Plaintiffs' fraud claim is barred by the parol evidence rule and the fact that the alleged misstatements are mere "puffery".

Each of Plaintiffs' claims --- including the common law fraud claim --- arising out of the allegation that the Lear Family Trust's "investment" was actually in TCG rather than CMS, and

///

///

///

---

[9]      In *Thorne v. Wagner*, 2007 U.S. District LEXIS 10750, 8-9 (D. Nev. 2007), the Court dismissed the plaintiffs' fraud claim pursuant to FRCP 9(b), observing, "The complaint does not identify the neutral facts as it does not specify which Defendant made the alleged false representation, but instead groups Singer and Wagner together as 'Defendants.'  The Complaint also does not identify with specificity what particular false statements are the subject of this claim, nor does it identify when or to whom Defendants made the statements."  (Emphasis supplied)

LAXALT & NOMURA,
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

17

that Defendants promised them the moon and the stars but failed to deliver, are barred by the parol evidence rule.[10]

> Generally, parol evidence may not be used to contradict the terms of a written contractual agreement. "The parol evidence rule forbids the reception of evidence which would vary or contradict the contract, since all prior negotiations and agreements are deemed to have been merged therein." *Daly v. Del E. Webb Corp.*, 96 Nev. 359, 361, 609 P.2d 319, 320 (1980). Where "a written contract is clear and unambiguous on its face, extraneous evidence cannot be introduced to explain its meaning." *Geo. B. Smith Chemical v. Simon*, 92 Nev. 580, 582, 555 P.2d 216, 216 (1976).

*Kaldi v. Farmers Ins. Exch.*, 117 Nev. 273, 281, 21 P.3d 16 (2001). The Court in *Kaldi* went on to explain that evidence of a party's intent (such as the Lears' assertion that they <u>thought</u> they were investing in TCG, not CMS, and that they stood to make "millions") is not admissible to create ambiguity in an otherwise unambiguous written contract. "To do so would be to eviscerate the parol evidence rule." *Kaldi*, 117 Nev. at 282.

The convertible note at issue is clear and unambiguous.[11] The Lear Family Trust loaned <u>CMS</u> (and <u>not</u> TCG) $250,000, with repayment due on September 30, 2011 unless the Trust elected to convert the obligation to common stock in CMS. (Ex. A, sec. 1, 2) To do so, the Trust was required to deliver the note to CMS, or verify why the note could not be delivered. (*Id.*, sec. 2.d) The complaint fails to allege either. Further, the Trust was expressly advised that the note was exempt from the 1933 Act, that it must be held indefinitely unless subsequently registered under the Act, and that the investment was "<u>highly speculative and subject to</u>

---

[10]    The parol evidence rule, NRS 104.2202, provides as follows:

"Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented:
    1.    By course of performance, course of dealing or usage of trade (NRS 104.1303); and
    2.    By evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement."

[11]    Whether a contract is integrated is a question of law. *Sullivan v. Mass. Mut. Life Ins. Co.*, 611 F.2d 261, 264 (9th Cir.1979).

LAXALT & NOMURA.
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

substantial risks." (*Id.*, sec. 5)  Plaintiffs' voluminous, conclusory allegations are contradicted by the unambiguous language of the note itself, and because these allegations are parol evidence, they cannot be considered by the Court.  Plaintiffs' fraud claim, and all other claims at odds with the language of the convertible note, fail as a matter of law.

To the extent, if any, Plaintiffs allegations of misrepresentation are not barred by the parol evidence rule, they fall short of establishing actionable misrepresentation because on their face they are mere puffery that would not considered by a reasonable investor. *In re Stratosphere Corp. Sec. Litig.*, 66 F.Supp.2d 1182, 1198 (D. Nev. 1999).  "Vague, hyperbolic statements of puffery lack the requisite materiality to support securities fraud, since no reasonable investor would rely on such statements." *Id.*  Accordingly, Plaintiff's fraud claim must be dismissed.

### 3.   Conversion.

Plaintiffs contend that Defendants converted their "invested monies" to their own use. They also contend that the Defendants "profited from the investment by Plaintiffs in such securities, all at the expense of and to the detriment of Plaintiffs." (Complaint, p. 21)

Conversion requires proof that the true owner of property has been deprived of his property by the unauthorized act of some person who assumes dominion or control over it. *Studebaker Bros. Co. v. Witcher* 44 Nev. 442, 462, 195 P. 334 (1921), quoting *Velsian v. Lewis*, 15 Ore. 539, 16 P. 631, 3 Am. St. Rep. 188.[12]  Yet Plaintiffs have not alleged any facts establishing an "unauthorized act of some person" which deprived them of their property.  To the contrary, they entered into an agreement with CMS (Ex. A, attached), and wrote it a check for

---

[12]     See also, *Tyrone Pacific Int'l, Inc. v. MV Eurychili*, 658 F.2d 664, 666 (9th Cir. 1981). "The elements of the tort of conversion are well settled in California: (1) plaintiffs' ownership or right to possession of the property at the time of the conversion; (2) defendants' conversion by a wrongful act or disposition of plaintiffs' property rights; and (3) damages.  'Conversion' has been defined as 'any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein.'"  *Id.* (internal citation omitted).

$250,000, the repayment of which is not due until September 30, 2011 unless Plaintiffs deliver the note to CMS and demand that it be converted into CMS common stock. They have not pled that they delivered the note to CMS as required. Thus, nothing could be more "authorized" than CMS's retention of the loan principle. In any event, no facts have been pled to suggest why Harelik, Lasater, HDI and/or Teletrade would be liable for CMS's alleged failure to repay monies loaned to it by the Lear Family Trust. As set forth above, Plaintiffs' self-serving argument to the contrary is also barred by the parol evidence rule.

### 5. Negligence.

Plaintiffs next claim that Defendants negligently "breached their respective legal, contractual and fiduciary duties to Plaintiffs" in various ways. (Complaint, p. 23) "To prevail on a negligence theory, the plaintiff generally must show that: (1) the defendant had a duty to exercise due care towards the plaintiff; (2) the defendant breached the duty; (3) the breach was an actual cause of the plaintiff's injury; (4) the breach was the proximate cause of the injury; and (5) the plaintiff suffered damage." *Perez v. Las Vegas Medical Ctr.*, 107 Nev. 1, 4, 805 P.2d 589 (1991).

One negligently breaches the duty of ordinary care --- not a statute or regulation. To the contrary, there can be no negligent breach an unspecified statute or other "legal obligation" which does not provide a private right of action is not an actionable private wrong. Nor can one be said to have negligently failed to complete a contract or fulfill an alleged fiduciary duty --- such an act or omission is simply a breach of contract or a breach of fiduciary duty.

As explained above, Plaintiffs have utterly failed to allege a single duty which Defendants allegedly breached which could give rise to a claim for negligence. There are no facts to suggest that either Harelik, Lasater, HDI or Teletrade owed Plaintiffs a "fiduciary" duty. In any event, CMS was the only party to the note. Plaintiffs make vague reference to unnamed "laws, rules and regulations" applying to Defendants' relationships with Plaintiffs, but fail to

LAXALT & NOMURA.
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

1  specify what those unnamed provisions required of Defendants, that Plaintiffs have a private

2  right of action, or facts suggesting that Defendants actually violated whatever the unnamed

3  "laws, rules and regulations" required.

4      This claim is also barred by the economic loss rule.  Although Plaintiffs later make vague

5  and unspecific reference to supposed "loss of sleep, depression, anxiety, nervous disorders,

6  physical illnesses and other maladies" in connection with their seventh claim for relief

7  (Complaint, para. 45), they did not allege any physical or emotional injury whatsoever in

8  

9  connection with their negligence claim, or in any earlier paragraph incorporated into their

10  negligence claim.  (Complaint, para. 33-37)  One may not recover contractual damages under a

11  negligence theory.  *Calloway v. City of Reno,* 116 Nev. 250, 256, 993 P.2d 1259 (2000).[13]

12      Lastly, this claim is barred by operation of the parol evidence rule.  CMS's only duties

13  under the note were to either pay the amount due on September 30, 2011, or to convert the

14  

15  repayment obligation into CMS common stock upon delivery of the note.  September 30, 2011

16  has not yet arrived, and Plaintiff has not pled that it delivered the note to CMS.  Accordingly,

17  this claim must be dismissed.

18      **6.      Breach of contract.**

19      In order to sustain a claim for breach of contract against CMS, Plaintiffs must prove: 1)

20  the existence of a valid contract; 2) Plaintiffs' performance or excuse for nonperformance; 3)

21  

22  breach by one or more Defendants; and 4) damage as a result of the breach.  *Reichert v. General*

23  *Ins. Co. of America,* 442 P.2d 377, 381 (Cal. 1968).

24      Plaintiffs allege no <u>facts</u> establishing a contract between them and either Harelik, Lasater,

25  HDI or Teletrade.  The operative agreement, Exhibit A, clearly indicates that it is between CMS

26  and the Lear Family Trust, and no one else.  This claim must be dismissed.

27  

28  

LAXALT & NOMURA,
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

[13]  *Calloway* was superseded by statute with respect to construction defect cases by NRS Ch. 40.

### 7.   Intentional and/or negligent infliction of emotional distress.

In order to recover on a claim for intentional infliction of emotional distress, Plaintiffs must establish:  (1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) severe or extreme emotional distress, and (3) actual or proximate causation.  *Mackintosh v. California Fed. Sav. & Loan Ass'n*, 113 Nev. 393, 408, 935 P.2d 1154 (1997), citing *Star v. Rabello*, 97 Nev. 124, 125, 625 P.2d 90 (1981).

The "extreme and outrageous conduct" requirement is an impossible hurdle for Plaintiffs to overcome.  As the Nevada Supreme Court explained in *Maduike v. Agency Rent-A-Car*, 114 Nev. 1, 953 P.2d 24 (1998), this requires proof of "extreme and outrageous conduct is that which is 'outside all possible bounds of decency' and is regarded as 'utterly intolerable in a civilized community.'"  114 Nev. at 4, citing BAJI 12.74.[14]

Plaintiffs have not alleged facts demonstrating "extreme and outrageous conduct is that which is 'outside all possible bounds of decency' and is regarded as 'utterly intolerable in a civilized community.'"  *Maduike*, 114 Nev. at 4.  Essentially, they alleged a breach of contract by CMS, not by the moving Defendants.  Further, the simple fact is that the holder of the note is a family trust, not the Plaintiffs.  Even if the Lears have properly sued CMS in their capacity as trustees of the Lear Family Trust, <u>trust instruments do not have feelings and emotions</u>.

If the Court permits Plaintiffs to alleged their own emotional distress as that of the Lear Family Trust --- a curious legal concept --- this claim fails for an additional, equally compelling reason.  Plaintiffs' weak, conclusory allegations of "loss of sleep, depression, anxiety, nervous disorders, physical illnesses and other maladies" (Complaint, pp. 25-26) are not only patently unbelievable, they are insufficient as a matter of law to support a claim for intentional infliction

---

[14]   See also *Restatement (Second) of Torts* § 46, Comment (d) (1965) ("extreme and outrageous" conduct is that which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community").

LAXALT & NOMURA,
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

1  of emotional distress.  On their face, these vague allegations of everyday issues do not rise to the

2  level "severe or extreme emotional distress."

3      For the same reasons, Plaintiffs may not recover for negligent infliction of emotional

4  distress.  As set forth above, the allegedly injured party is (or should be) a trust instrument, not a

5  person.  Further, there is no allegation in the complaint that Plaintiffs' alleged emotional distress

6  was "secondary to physical injuries," or that it arose out of a "physical impact."  Therefore, they

7  must plead and prove "'serious emotional distress' causing physical injury or illness . . . ."

8  *Barmettler v. Reno Air, Inc.*, 114 Nev. 441, 448, 956 P.2d 1382 (1998) (emphasis supplied).

9

10      Plaintiffs' emotional distress claims also fail because the Nevada Supreme Court recently

11  adopted the rule that negligent infliction of emotional distress may not be based on an underlying

12  pecuniary loss.  "[W]e conclude that a claim for negligent infliction of emotional distress cannot

13  be premised upon an attorney's negligence in a legal malpractice case."  *Kahn v. Morse &*

14  *Mowbray*, 121 Nev. Adv. Op. 48, 117 P.3d 227, 237 (2005).  "Additionally, we hold that a claim

15  of negligent infliction of emotional distress is inappropriate in the context of a legal malpractice

16  suit when the harm resulted from pecuniary damages, even if the plaintiffs demonstrated physical

17  symptoms.  The rationale behind such a rule is that "the primary interest protected in legal

18  malpractice actions is economic and 'serious emotional distress is not an inevitable consequence

19  of the loss of money.'"  We agree with this rationale."  117 P.3d at 237 (internal citation omitted)

20  (emphasis supplied).  While the specific context of the case was legal malpractice, there is no

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28

LAXALT & NOMURA,
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

1  reason to believe that its holding would not apply to other claims, such as this one, involving

2  only pecuniary loss.[15]

3      For each of these many reasons, Plaintiffs' infliction of emotional distress claims must be

4  dismissed.

5      **8/9.   Breach of covenant of good faith and fair dealing and "bad faith conduct."**

6

7      Every Nevada contract includes an implied duty of good faith and fair dealing. <u>See</u>

8  *Albert H. Wohlers & Co. v. Bartgis*, 114 Nev. 1249, 1258, 969 P.2d 949, 956 (1998), <u>cert.</u>

9  <u>denied</u>, 527 U.S. 1038 (1999). Breach of this implied term will give rise to contract damages,

10  just like a breach of contract action. Where a "special relationship" exists between the parties,

11  such as between an insurer and insured or franchisor and franchisee, the damaged party may sue

12  in tort and potentially recover punitive damages. However, an element of this cause of action is

13  the existence of a contract between the plaintiff and defendant. *Perry v. Jordan*, 111 Nev. 943,

14  948, 900 P.2d 335 (1995). As set forth above, none of the moving Defendants were parties to the

15  contract.

16

17      **10.   Deceptive trade practices (NRS Ch. 598).**

18      The statutory scheme of NRS 598 provides for actions to be investigated and prosecuted

19  by the Commissioner of Consumer Affairs, the Director of the Department of Business and

20  Industry, the Attorney General and/or the District Attorney. <u>See</u> NRS 598.0957 <u>et. seq.</u>

21

22

23  [15]    Even if there were no such per se rule against recovering for negligently inflicted emotional distress allegedly arising out of pecuniary loss, Plaintiffs' claim would remain insufficient as a matter of law. The damages claimed are not reasonably foreseeable in a contractual, investment setting, and therefore the Nevada Supreme Court would not permit their recovery as a matter of law under these alleged facts. In *Crippens v. Sav-On Drug Stores*, 114 Nev. 760, 961 P.2d 761 (1998), the Court noted, "The majority of the cases on negligent infliction of emotional distress have involved automobile accidents, including *Eaton*." *Id.* at 762 (referring to *State v. Eaton*, 101 Nev. 705, 710 P.2d 1370 (1985), the seminal "bystander" case). The Court explained that although this tort is not strictly limited to accident cases, "The overall circumstances must be examined to determine whether the harm to the plaintiff was reasonably foreseeable. Foreseeability is the cornerstone of this court's test for negligent infliction of emotional distress. " *Crippens*, 114 Nev. at 763.

However, NRS 598.0977 entitled "Civil action by elderly or disabled person against person who engaged in deceptive trade practice; remedies" provides:

> If an elderly or disabled person suffers damage or injury as a result of a deceptive trade practice, he or his legal representative, if any, may commence a civil action against any person who engaged in the practice to recover the actual damages suffered by the elderly or disabled person, punitive damages, if appropriate, and reasonable attorney's fees.  The collection of any restitution awarded pursuant to this section has priority over the collection of any civil penalty imposed pursuant to NRS 598.0973.

Although this statute provides a limited private right of action, Plaintiffs have not pled that they are either elderly[16] or disabled.[17]  Certainly, the actual party to the agreement --- the incorporeal Lear Family Trust --- cannot be regarded as elderly or disable.  Therefore, Plaintiffs have no standing to bring such a claim against Defendants.

## 11.    Racketeering.

In their Eleventh Cause of Action, Plaintiffs allege generally that Defendants' actions constitute "racketeering" under "18 USCA Sec. 1961, et seq." (Complaint, para. 67)  Any claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO") must specify the subsections of 18 U.S.C. § 1962 under which it is proceeding.  See *Washington v. Baenziger*, 656 F. Supp. 1176, 1178 (D. Cal. 1987).  Plaintiffs have not alleged what subsection of 18 U.S.C . § 1962 they are proceeding under, which is fatal to this claim.

### a.    Plaintiffs do not allege that an "enterprise" existed.

The elements of a civil RICO claim are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as "predicate acts") (5) causing injury to the plaintiff's

---

[16]    Defined as 60 or older .  NRS 598.0933.

[17]    Defined as a physical or mental impairment that substantially limits one or more of the major life activities of the person.  NRS 598.093.

1    business or property." *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) *citing* 18 U.S.C. §§

2    1964(c), 1962(c); *Sedima, S.P.R.L. v. IMREX Co.*, 473 U.S. 479, 496 (1985).

3            Plaintiffs' complaint fails to allege the requisite elements of a civil RICO claim and

4    suffers from a complete "absence of sufficient facts alleged under a cognizable legal theory."

5    *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988). The complaint does not

6
     allege that an "enterprise" existed as required by 18 U.S.C. § 1964. Under 18 U.S.C. § 1961(4)
7
     an "enterprise" includes "any individual, partnership, corporation, association, or other legal
8
9    entity, and any union or group of individuals associated in fact although not a legal entity." An

10   associated-in-fact enterprise is "a group of persons associated together for a common purpose of

11   engaging in a course of conduct." *Odom v. Microsoft Corp.*, ____ F.3d ____; 2007 U.S. App.

12   LEXIS 10519 (9th Cir. 2007). Plaintiffs must allege facts supporting "evidence of an ongoing

13
     organization, formal or informal," and "evidence that the various associates function as a
14
     continuing unit." *Id.* quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981). Plaintiffs'
15
16   complaint alleges nothing regarding enterprise, and accordingly dismissal is appropriate.

17           **b.    Plaintiffs fail to allege the occurrence of two or more predicate
                     acts.**
18
19           Plaintiffs allege that "at least two predicate acts (common law fraud and misuse of

20   monies and property, all unrelated to securities transactions)" exist. This is patently insufficient

21   to state a claim for relief under the civil RICO statute, as the alleged fraud and misuse of monies

22   and property (each of which, in turn, is subject to dismissal) revolve around a single

23   "transaction".

24
             The definition of a "pattern of racketeering activity" requires "at least two acts of
25
     racketeering activity." 18 U.S.C. § 1961(5); see *Sedima v. Imrex Co.*, 473 U.S. 479, 497 (1985).
26
27   The relevant question is whether, assuming the truth of the allegations in the complaint, the

28   RICO defendants could have been indicted for more than one predicate offense.

LAXALT & NOMURA.
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

Plaintiffs' RICO claims rest upon a single transaction and thus the "threat of continued criminal activity" required by *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989), is missing. Under *H.J.*, to prove a pattern a plaintiff "must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J.*, 492 U.S. at 239.

In *Newman v. Comprehensive Care Corp.*, 794 F. Supp. 1513, 1526 (D. Or. 1992), the Court granted a motion to dismiss on civil RICO claims because the plaintiffs could not allege a "pattern." The plaintiffs could only point to a single transaction --- a failed corporate merger --- on which to base their "threat of continued criminal activity." The court rightly found this insufficient to state a claim for relief under RICO.

Likewise in the present case, Plaintiffs point to only one transaction on which to premise a "threat of continued criminal activity" --- the Lear Family Trust's investment of $250,000 with CMS. They have not even alleged a "transaction" with any of the moving Defendants. Thus, they cannot establish a "pattern" as required by *H.J.* Simply put, the complaint alleges a single transaction (and that single transaction was with CMS), not the requisite two or more predicate acts.[18] Accordingly, dismissal is appropriate.

## 12.     Interference with contracts.

"In an action for intentional interference with contractual relations, a plaintiff must establish: (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 274, 71

---

[18]    Courts have consistently held that each sale of a security constitutes a separate offense. See *United States v. Naftalin*, 606 F.2d 809, 810 (8th Cir. 1979).

LAXALT & NOMURA,
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

P.3d 1264 (2003). "[M]ere knowledge of the contract is insufficient to establish that the defendant intended or designed to disrupt the plaintiff's contractual relationship; instead, the plaintiff must demonstrate that the defendant <u>intended to induce the other party to breach the contract with the plaintiff</u>." *Id.* at 276 (emphasis supplied).

Plaintiffs' claim fails on multiple fronts: They have failed to allege <u>facts</u> demonstrating a specific contract between Plaintiffs and a third party; and more importantly they have failed to allege that any of the moving Defendants both <u>knew</u> of this unnamed contract and <u>intended</u> to induce the other party to breach the contract with Plaintiffs. This claim must be dismissed as to all moving Defendants.

### 13.    Interference with prospective economic advantage.

The following elements must be proven to establish the tort of interference with prospective business advantage: "(1) a prospective contractual relationship between the plaintiff and a third party; (2) the defendant's knowledge of this prospective relationship; (3) the intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and, (5) actual harm to the plaintiff as a result of the defendant's conduct." *Consolidated Generator-Nevada, Inc. v. Cummins Engine Co.,* 114 Nev. 1304, 1311, 971 P.2d 1251 (1998).

Once again, Plaintiffs have failed to allege <u>facts</u> demonstrating a specific prospective contractual relationship between Plaintiffs and a third party, or that one or more of the moving Defendants <u>intended</u> to preclude the formation of such a contract. This claim must be dismissed as to all moving Defendants.

### 14.    Conspiracy.

An actionable civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage. *Collins v. Union Federal Sav. & Loan,* 99 Nev. 284, 662 P.2d

LAXALT & NOMURA.
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

28

1  610 (1983). "To state a cause of action for conspiracy, the complaint must allege: 1) the

2  formation and operation of the conspiracy; 2) the wrongful act or acts done pursuant thereto; and

3  3) the damage resulting from such act or acts." *Ungaro v. Desert Palace, Inc.*, 732 F.Supp.

4  1522, 1532 (D. Nev. 1989). "The *sine qua non* of a conspiratorial agreement is the knowledge

5  on the part of the alleged conspirators of its unlawful objective and their intent to aid in

6  achieving that objective. The alleged facts must show either expressly or by reasonable

7  inference that <u>Defendant had knowledge of the object and purpose of the conspiracy,</u> that there

8  was an <u>agreement to injure the Plaintiff,</u> that there was a <u>meeting of the minds on the objective</u>

9  <u>and course of action,</u> and that as a result <u>one of the defendants committed an act resulting in the</u>

10  <u>injury.</u>" *Id.* (internal citations omitted) (emphasis added).[19]

11

12      Plaintiffs' complaint, coupled with the plain language of the convertible note, can only be

13  interpreted as alleging that CMS and the other Defendants somehow utilized the $250,000 which

14  the Lear Family Trust loaned CMS in a manner not to the Plaintiffs' liking, such that they want

15  the Trust's investment back more than four years before payment becomes due. Yet they have

16  failed to alleged any <u>facts</u> demonstrating, either expressly or by reasonable inference, the object

17  of the supposed conspiracy, that either CMS, Ms. Tierney, or TCG had "knowledge" of the

18  "object and purpose of the conspiracy," or that there was "an agreement to injure" the Plaintiffs

19  and that as a result one of the moving Defendants committed an act resulting in the injury.

20  *Ungaro*, 732 F.Supp. at 1532. Plaintiffs cannot convert a failed breach of contract claim into a

---

[19]    The Court is entitled to look behind the bare allegations of the complaint, at least to some degree. For example, in *Ungaro* the Court explained as follows while analyzing the plaintiff's allegation that alleged conspirators had a "purpose to harm" the plaintiff: "Merely because Caesars did not choose to protect its employees' rights by requiring proper IRS procedures does not reasonably lead one to conclude that it had a 'purpose to harm' the employees. On the contrary, Plaintiff's allegation that Caesars acted as it did in order to avoid bad employer / employee relations reasonably implies a lack of intent to injure the employees. A person seeking to have good relations with someone usually does not also intend to injure that other person since injury to that other person would hamper good relations." 732 F. Supp. at 1532.

LAXALT & NOMURA,
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

1    more exotic "conspiracy" simply by postulating vague, unsubstantiated involvement in an

2    alleged "scam" by a number of non-parties to the contract.

3    **15/16.  Declaratory relief, injunctive relief, and accounting.**

4    Plaintiffs loaned CMS a sum of money, the repayment of which is not due until

5    September 30, 2011.  (Ex. A, sec. 1)  They have not alleged that the Lear Family Trust has

6    demanded that the repayment of the funds be converted into an immediate transfer of stock.

7

8    (Complaint, *passim*, Ex. A)  Most importantly of all, the moving Defendants are not even a party

9    to the contract under which the money was loaned.  There is no basis whatsoever in the pleading

10   for an accounting with respect to the moving Defendants, for injunctive relief against the moving

11   Defendants, or for declaratory relief with respect to the moving Defendants.

12   **E.      Conclusion.**

13   For the reasons set forth above, the moving Defendants respectfully pray for the Court's

14   order dismissing Plaintiffs' Complaint without leave to replead for failure to state a claim on

15   which relief can be granted.  To the extent the Court allows and claims to survive, it should order

16

17   Plaintiff to set forth a more definite statement of those claims.

18   DATED this 5th day of June, 2007.

19

20                                          LAXALT & NOMURA, LTD

21

22                        By:    _____

23                                 Daniel T. Hayward, Esq.
                                   Nevada State Bar No. 5986
24                                 9600 Gateway Drive
                                   Reno, Nevada  89521
25                                 Tel:  (775) 322-1170
                                   Fax: (775) 322-1865
26

27

28

LAXALT & NOMURA,
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I hereby certify that I am an employee of LAXALT & NOMURA, LTD., and that on the 5 day of June, 2007, I caused to be served a true and correct copy of the foregoing by:

☒ E-Service

☐ Mail on the parties listed below in said action, by placing a true copy thereof enclosed in a sealed envelope in a designated area for outgoing mail, addressed as set forth below. At the Law Offices of Laxalt & Nomura, mail placed in that designated area is given the correct amount of postage and is deposited that same date in the ordinary course of business, in a United States mailbox in the City of Reno, County of Washoe, Nevada.

☐ Personal delivery by causing a true copy thereof to be hand delivered this date to the address(es) at the address(es) set forth below.

☐ Facsimile on the parties in said action by causing a true copy thereof to be telecopied to the number indicated after the address(es) noted below.

☐ Federal Express or other overnight delivery.

☐ Reno/Carson Messenger Service

addressed as follows:

Michael J. Morrison, Esq.
1495 Ridgeview Drive, Suite 220
Reno, Nevada 89509
Telephone: (775) 827-6300
Facsimile: (775) 827-6311

An employee of Laxalt & Nomura, Ltd.

LAXALT & NOMURA.
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521

31