**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DAVID LEAR and SANDRA L. LEAR, Husband and Wife, ) | 3:07-cv-00176-BES-VPC |
| Plaintiffs, ) | **ORDER** |
| v. ) | |
| MARI TIERNEY a/k/a MARIE TIERNEY, an individual; THE COMMERCE GUILD, INC., a Nevada corporation; DALE R. HARELIK, an individual; GARY LASATER, an individual; HARELIK DIVERSIFIED INTERESTS, INC., a Nevada corporation; TELETRADE INTERNATIONAL, INC., a Nevada corporation; DOES 1 through 10, inclusive; and ROE CORPORATIONS 1 through 10, inclusive, ) | |
| Defendants. ) | |

Currently before this Court is a Motion to Dismiss (#18) filed by Defendants Mari Tierney ("Tierney"), The Commerce Guild, Inc. ("TCG"), and Creative Marketing Solutions, Inc. ("CMS") on May 21, 2007. Also before the Court is a Motion to Dismiss (#20) filed by Defendants Dale R. Harelik ("Harelik"), Gary Lasater ("Lasatar"), Harelik Diversified Interests, Inc. ("HDI"), and Teletrade International, Inc. ("Teletrade") on June 5, 2007.[1]  Plaintiffs filed a Response (#30) on October 9, 2007 in opposition to both motions and Defendants filed their respective Reply briefs (#33/#34) on October 31, 2007.

---

[1] The Court notes that both motions to dismiss and reply briefs are essentially identical, in that they address the same deficiencies in the Complaint and have been prepared by the same counsel. Accordingly, the Court will discuss the arguments raised in the motions together.

**I. BACKGROUND**

This action arises out of a $250,000 investment made by Plaintiffs, who are Nevada residents. The investment is memorialized in the form of a Convertible Note ("Note") executed on September 25, 2006 by Plaintiffs, as trustees of the David R. Lear and Sandra L. Lear Family Trust ("Lear Family Trust"), and Tierney, the sole shareholder and CEO of CMS. (Motion (#18), Ex. A[2]). According to Plaintiffs, Tierney and Harelik, both Nevada residents, solicited Plaintiffs' investment to fund an alleged scam, referred to as the "TCG Scheme," involving TCG and CMS, which are both Nevada corporations. Allegedly, Tierney, Harelik and Lasater (also a Nevada resident) served as agents of all other Defendants and each other in their involvement with the TCG Scheme. Plaintiffs allege that HGI and Teletrade, Nevada corporations, were used by Tierney and Harelik to "perpetuate the financial fraud" of the TCG Scheme.

Pursuant to the terms of the Note, the outstanding principal balance and interest owing to Plaintiffs is due and payable on September 30, 2011, unless they elect to convert the Note to CMS stock. The Note explains that securities obtained through conversion have not been registered under the Securities and Exchange Act of 1934 and are subject to SEC Rule 144. (Motion (#20), Ex. A, Sec. 5) The Note also advises that the investment is considered "highly speculative and subject to substantial risks." Id. According to Plaintiffs, Defendants have failed and refused to deliver the requested securities to Plaintiffs, notwithstanding numerous demands for such delivery. (Complaint (#2), p. 3). However, Defendants maintain that the Lear Family Trust has never properly exercised its right to convert the Note to stock, which is only accomplished by delivery of the Note to CMS or verification of why the Note could not be delivered. (Motion (#20), Ex. A, Sec. 2.d). Plaintiffs also allege that they were fraudulently

---

[2] Although this Court's review on a 12(b)(6) motion to dismiss is normally limited to the contents of the complaint, the Court may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice without converting the motion into a motion for summary judgment. See United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). In ruling on the motions pending in this case, the Court has considered the Note attached to the motions because the agreement is referred to in the Complaint, it forms the basis of Plaintiffs' claims, and Plaintiffs have not challenged the authenticity of the document.

induced to invest their money based on misrepresentations made by Tierney and other Defendants regarding how the money would be used and what return on investment they could expect. Plaintiffs believed their investment funds would be used solely for the operation of what was described as "a proprietary new money transfer business." Instead, Plaintiffs have allegedly discovered that Defendants used Plaintiffs' money to pay debts and obligations of Defendants and purchase assets for their own personal use.

Plaintiffs initiated the current action on April 10, 2007, asserting federal claims of securities fraud and racketeering, as well as numerous claims under Nevada state law. Plaintiffs also seek declaratory and injunctive relief, and an accounting regarding the handling of Plaintiffs' investment funds. Defendants seek dismissal of all counts asserted against them.

## II. LEGAL STANDARD

In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court must accept as true all material allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations. LSO, Ltd. v. Stroh, 205 F.3d 1146, 1150 (9th Cir. 2000). The allegations of the complaint also must be construed in the light most favorable to the nonmoving party. Shwarz v. United States, 234 F.3d 428, 435 (9th Cir. 2000). The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). However, there is a strong presumption against dismissing an action for failure to state a claim. See Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted). Thus, upon being adequately stated, a claim may be supported by showing "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1969 (2007) (citation omitted). While a complaint need not plead "detailed factual allegations," the factual allegations it does include "must be enough to raise a right to relief above the speculative level." Id. at 1964-65. "The pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action ." Id. at 1965. Applying these principles, the Court now considers whether Plaintiffs' Complaint survives Defendants' motions to dismiss.

## III.  ANALYSIS

**A.  Federal Securities Fraud Claims (First and Fourth Causes of Action)**

In their First and Fourth Causes of Action, Plaintiffs allege violations of the Securities Act of 1933, 15 U.S.C. §§ 77a et seq. ("1933 Act") and the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq. ("1934 Act").

　　1.　　Allegations of False and Misleading Statements (First Cause of Action)

Plaintiffs' First Cause of Action alleges violations of the antifraud provisions of Section 17(a) of the 1933 Act, 15 U.S.C. § 77g(a), Section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.  Collectively, these provisions generally "forbid making [1] a material misstatement or omission [2] in connection with the offer or sale of a security [3] by means of interstate commerce."  SEC v. Phan, 500 F.3d 895, 907-08 (9th Cir. 2007).  Violations of Section 17(a)(1), Section 10(b) and Rule 10b-5 require scienter, while violations of Sections 17(a)(2) and (3) require merely a showing of negligence.  Id. (quoting SEC v. Dain Rauscher, Inc., 254 F.3d 852, 856 (9th Cir. 2001)).

The elements of a claim under Section 10(b) and Rule 10b-5 are: (1) a material misrepresentation or omission of fact; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance (often referred to as "transaction causation"); (5) economic loss; and (6) loss causation (i.e., a causal connection between the manipulative or deceptive device or contrivance and the loss).  Simpson v. AOL Time Warner, 452 F.3d 1040, 1047 (9th Cir. 2006); see also Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 341-42 (2005).  To plead scienter properly, "[t]he complaint must allege that the defendant made false or misleading statements either intentionally or with deliberate recklessness or, if the challenged representation is a forward looking statement, with actual knowledge that the statement was false or misleading."  In re Vantive Corp. Sec. Litig., 283 F.3d 1079, 1085 (9th Cir. 2002).

A securities fraud claim must first meet the particularity requirements of FRCP 9(b). See In re Daou Systems, Inc. Securities Litigation, 411 F.3d 1006, 1014 (9th Cir. 2005).  Rule 9(b) requires averments of fraud to be pleaded with particularity, including the time, date,

4

place, and persons associated with each misrepresentation or act of fraud. In re GlenFed, Inc. Securities Litigation, 42 F.3d 1541, 1547-49 (9th Cir. 1994). Because the plaintiff must set forth what is false or misleading about a particular statement, he must do more than simply allege the neutral facts necessary to identify the transaction - he must also explain why the disputed statement was untrue or misleading at the time it was made. Yourish v. California Amplifier, 191 F.3d 983, 992-93 (9th Cir. 1999). In addition, a federal securities fraud claim must satisfy the more stringent requirements imposed on securities fraud pleadings by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4. See Foster v. Wilson, 504 F.3d 1046, 1050 (9th Cir. 2007); Silicon Graphics, Inc. Securities Litigation, 183 F.3d 970, 974 (9th Cir. 1999). In determining whether a federal securities fraud claim adequately alleges scienter, "the inquiry . . . is whether all of the facts alleged, taken collectively, give rise to a *strong inference* of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." Foster, 504 F.3d at 1050.

Plaintiffs' Complaint does not adequately or properly state a claim of federal securities fraud. Plaintiffs generally allege that they were misled in a number of ways related to how their investment was to be used, but none of the allegations rise to the level of specificity required under the PSLRA. Plaintiffs also allege that "Defendants acted with *scienter* and were willful, malicious, and greedy in their conduct." (Complaint (#2), ¶ 14) (emphasis in original). However, this type of conclusory allegation, unaccompanied by specific facts, is insufficient to create a strong inference that any of the Defendants acted with scienter, as required by the PSLRA. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S.Ct. 2499, 2504 (2007) (the PSLRA "requires [federal securities fraud] plaintiffs to state with particularity both the facts constituting the alleged violation and the facts evidencing scienter, i.e., the defendant's intention 'to deceive, manipulate, or defraud.'"). Moreover, in their opposition, Plaintiffs fails to address any of the PSLRA deficiencies of their Complaint that were raised by Defendants. Accordingly, Plaintiffs' securities fraud claims against Defendants must be dismissed.

      2.     <u>Unregistered Sale of Securities (Fourth Cause of Action)</u>

In their Fourth Cause of Action, Plaintiffs allege violations of sections 5 and 12 of the 1933 Act, based on Defendants' "unauthorized creation and subsequent sale of unregistered securities." (Complaint (#2), p. 22). Section 12(1) of the 1933 Act imposes liability on any person who "offers or sells a security" in violation of Section 5 of the 1933 Act. Section 5 forbids the offer or sale by any person of unregistered securities in interstate commerce. 15 U.S.C. § 77e; <u>SEC v. Murphy</u>, 626 F.2d 633, 640 (9th Cir. 1980). However, Sections 5 and 12 do not apply to private offers of sales of securities, like that involved in this case. <u>See, e.g.</u>, <u>Murphy</u>, 626 F.2d at 641 ("§ 5 does not apply if the securities are exempt from registration as a private offering"). Thus, Defendants contend that the alleged securities sold to Plaintiffs are exempt from registration under the private offering exemption of the 1933 Act. In their Complaint Plaintiffs have alleged no facts to infer that their transaction amounts to a public offering. Additionally, in their Opposition Plaintiffs do not dispute that the alleged securities at issue are exempt from registration as a private offering. Accordingly, the Court finds that Defendants cannot be held liable for the offer and sale of unregistered securities.

**B.**    **Federal Racketeering Claim (Count Eleven)**

In their Eleventh Cause of Action, Plaintiffs generally allege that Defendants' conduct violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968. The elements of a civil RICO claim are as follows: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'" <u>Living Designs, Inc. v. E.I. Dupont de Nemours and Co.</u>, 431 F.3d 353, 361 (9th Cir. 2005) (quoting <u>Grimmett v. Brown</u>, 75 F.3d 506, 510 (9th Cir. 1996)). Plaintiffs generally allege "at least two predicate acts" of "common law fraud and misuse of monies and property" in support of their RICO claim. (Complaint (#2), ¶ 67). However, Plaintiffs' RICO claim is defective because Plaintiffs fail to allege any facts that establish the existence of an "enterprise" as defined by RICO. An enterprise may be any individual, partnership, corporation, association, or even a group of individuals not constituting a legal

6

entity. 18 U.S.C. § 1961(4). However, because Plaintiffs' Complaint alleges nothing regarding enterprise, the RICO claim should be dismissed.

### C. Requests for Declaratory and Injunctive Relief and Accounting (Counts Fifteen and Sixteen)

Plaintiffs seek declaratory and injunctive relief regarding their rights related to their investment in and purchase of securities, and to compel the production of an accounting from Defendants. However, because this Court has decided that Plaintiffs failed to state claims for relief under federal law, this Court is deprived of jurisdiction. See Howard v. America Online Inc., 208 F.3d 741, 753-54 (9th Cir. 2000) (federal jurisdiction did not exist over requests for declaratory and injunctive relief where plaintiffs did not sufficiently plead underlying federal claims).

### D. State Claims

Having dismissed Plaintiffs' federal claims against Defendants, this Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. See 28 U.S.C. § 1367(c)(3); see also Schneider v. TRW, Inc., 938 F.2d 986, 993 (9th Cir. 1991) (in the usual case in which federal law claims are eliminated before trial, the district court should decline to exercise jurisdiction over the remaining state law claims).

### E. Dismissal Without Leave to Amend

Defendants ask the court to dismiss the Complaint without leave to amend. In general, "[d]ismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment." In re Silicon Graphics Inc. Securities Litigation, 183 F.3d 970, 991 (9th Cir. 1999) (citation omitted). Leave to amend is not required, however, where it is absolutely clear that the deficiencies of the complaint could not be cured by amendment. See Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002); see also Shermoen v. U.S., 982 F.2d 1312, 1319 (9th Cir.1992) ("'[A] district court does not err in denying leave to amend where the amendment would be futile.'").

7

Although Plaintiffs do not request leave to amend their claims of federal securities fraud, they do request that the Court allow their racketeering claim "to be more definitely stated, rather than dismissed." (Opp. (#30), p. 29). However, Plaintiffs have not suggested an amendment that could provide additional facts that might establish a viable claim under RICO, and the Court has doubts about Plaintiffs' ability to cure the defects in their federal claims in an amended pleading. Accordingly, Counts One, Four and Eleven are dismissed without leave to amend.

## IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that the Motion to Dismiss (#18) filed by Defendants Tierney, TCG and CMS and the Motion to Dismiss (#20) filed by Defendants Harelik, Lasater, HDI, and Teletrade are GRANTED on Plaintiffs' First, Fourth, Eleventh, Fifteenth, and Sixteenth Claims against Defendants. Plaintiffs' remaining state law claims against Defendants are dismissed without prejudice.

DATED: This 1st day of February, 2008.

_____
UNITED STATES DISTRICT JUDGE