**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| DAVID LEAR, et al., | 3:07-CV-0176-BES (VPC) |
| Plaintiffs, | |
| vs. | **ORDER REGARDING** **ATTORNEYS' FEES AND COSTS** |
| MARI TIERNEY, et al., | |
| Defendants. | |

Defendants, Mari Tierney aka Marie Tierney, The Commerce Guild, Inc., Creative Marketing Solutions, Inc., Dale R. Harelik, Gary Lasater, Harelik Diversified Interests, Inc., and Teletrade International, Inc., ("Defendants") have moved for attorneys fees and costs (#37), plaintiffs, David Lear and Sandra L. Lear ("plaintiffs") opposed (#41) and defendants replied (#46). For the reasons set for below, defendants' motion is granted.

**I.     Procedural History**

On February 1, 2008, the District Court issued its order granting the defendants' motion to dismiss this action (#35). The District Court dismissed plaintiffs' first, fourth, eleventh, fifteenth, and sixteenth claims for relief, and dismissed without prejudice the plaintiffs' remaining eleven state law claims. *Id.* Defendants now seek recovery of their attorney's fees and costs.

On September 25, 2006, defendant, Mari Tierney, the sole shareholder and CEO of CMS, and plaintiffs, as trustees of the Lear Family Trust, executed a convertible note (#2). The convertible note provides that the outstanding principal balance and interest due to plaintiffs was due and payable on

September 30, 2011, unless they elected to convert the note to CMS stock (#37, Ex. A). Section 5 of the convertible note states in relevant part:

    5.    <u>Representations and Warranties of the Holder</u>. The Holder represents and warrants to the Company as follows:

    (a)    <u>Investment Intent</u>. The Holder is acquiring this Convertible Note and any securities acquired hereunder for investment for the Holder's own account and may resell to anyone, or assign any distribution thereof to members of "Holder." The Holder understands that the Securities have not been, and will not be, registered under the Securities Act of 1933, as amended (the "Act"). The Holder understands that the Securities have not been registered under the Act by reason of a specific exemption from the registration provisions of the Act that depends upon, among other things, the bona fide nature of the investment intent as expressed herein. The Holder understands and agrees that the Securities shall not be sold, pledged, hypothecated or otherwise transferred unless registered under the Act and applicable state securities laws or an exemption from registration is available and that each certificate or other document evidencing or representing the Securities shall be stamped or otherwise imprinted with a legend in substantially the following form:

> THE SECURITIES OF THE COMPANY EVIDENCED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED WITH THE SECURITIES AND EXCHANGE COMMISSION OR THE SECURITIES COMMISSION OF ANY STATE IN RELIANCE UPON EXEMPTIONS FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT OF 1933, AS AMENDED, AND VARIOUS APPLICABLE STATE SECURITIES LAWS. THESE SECURITIES MAY NOT BE SOLD, TRANSFERRED, PLEDGED OR ASSIGNED OR A SECURITY INTEREST CREATED THEREIN, UNLESS THE PURCHASER, TRANSFEREE, ASSIGNEE, PLEDGEE OR HOLDER OF SUCH SECURITY INTEREST COMPLIES WITH ALL STATE OR FEDERAL SECURITIES LAWS (I.E., SUCH SHARES ARE REGISTERED UNDER SUCH LAWS OR AN EXEMPTION IS AVAILABLE THEREUNDER) AND UNLESS THE SELLER, TRANSFEROR, ASSIGNOR, PLEDGOR OR GRANTOR OF SUCH SECURITY INTEREST PROVIDES AN OPINION OF COUNSEL REASONABLY SATISFACTORY TO THE COMPANY THAT THE TRANSACTION CONTEMPLATED WOULD NOT BE IN VIOLATION OF THE SECURITIES ACT OF 1933, AS AMENDED, OR ANY APPLICABLE STATE SECURITIES LAWS.

    (b)    <u>Rule 144</u>. The Holder acknowledges that the Securities must be held indefinitely unless subsequently registered under the Act, or unless an exemption from such registration is available. The Holder is aware of the provisions of Rules 144 and 144A promulgated under the Act that permit limited resale of securities purchased in a private placement subject to the satisfaction of certain conditions, including, among other things, in most circumstances (i) the availability of certain current public information about the Company, (ii) the resale occurring not less than one (1) year after a party has purchased and fully paid for the shares, (iii) the sale being effected through a "broker's transaction" or in the transactions directly with a "market Maker" (as provided by Rule 144(f)), and (iv) the number of shares being sold during any three month period not exceeding specified limitations.

* * *

      (d)   <u>Speculative Investments</u>. The Holder is aware that an investment in the Securities is highly speculative and subject to substantial risks. The Holder has adequate means of providing for its current needs and possible contingencies, and is able to bear the high degree of economic risk of the investment, including, but not limited to, the possibility of the complete loss of the Holder's entire investment, and the limited transferability of the Securities, which may make the liquidation of this investment impossible for the indefinite future. . . .

*Id.*

The convertible note states that securities obtained through conversion have not been registered under the Securities and Exchange Act of 1933 and are subject to SEC Rule 144. *Id.* The convertible note further provides that the investment is considered "highly speculative and subject to substantial risks." *Id.* Although plaintiffs alleged in their complaint that defendants failed and refused to deliver the requested securities to plaintiffs, the defendants contend that the Lear Family Trust never properly exercised its right to convert the note to stock, which is only achieved by delivery of the note to CMS or verification that the convertible note could not be delivered (#20).

Paragraph ten of the note provides:

> Attorneys' Fees: If any legal action or other proceeding is brought for the enforcement of this Convertible Note, the prevailing party or parties shall be entitled to recover reasonable attorneys' fees or other costs incurred in connection with such action or proceeding and in any petition for appeal or appeal therefrom, in addition to any other relief to which it or they may be entitled.

(#37, Ex. A).

Plaintiffs alleged in their complaint that they were fraudulently induced to invest their money based misrepresentations of defendant Tierney and other defendants concerning how the funds would be used and what return plaintiffs could expect on their investment (#2). Their thirty-eight page complaint asserts sixteen claims for relief, and plaintiffs alleged claims for violations of the Securities Act of 1933, the Securities Exchange Act of 1934, and civil RICO. *Id.* Plaintiffs also alleged state law claims of fraud, conversion, negligence, breach of contract, intentional and/or negligent infliction of emotional distress, breach of covenant of good faith and fair dealing and bad faith conduct, deceptive trade practices, interference with contracts, interference with prospective economic advantage, and

3

1  conspiracy. *Id.* Finally, plaintiffs asked for declaratory and injunctive relief, as well as an accounting.
2  *Id.*

3  **II.    Discussion and Analysis**

4  ***A.    The Attorney's Fees Provision of the Convertible Note***

5  Defendants seek recovery of attorney's fees and costs under two theories.  First, defendants
6  contend that they are entitled to attorney's fees under the plain language of the convertible note.  Second,
7  defendants assert that they are also entitled to an award of attorney's fees and costs pursuant to Section
8  11(e) of the Securities Act of 1933.  Each is addressed in turn.

9  In its order dismissing this action, the District Court states, "This action arises out of a $250,000
10 investment made by Plaintiffs," in defendant, Creative Marketing Solutions ("CMS"), and "the
11 investment is memorialized in the form of a Convertible Note ("Note")" (#35).  The District Court notes
12 that plaintiffs alleged that "Defendants have failed and refused to deliver the requested [CMS] securities
13 to Plaintiffs, notwithstanding numerous demands for such delivery." *Id.* (citing complaint (#2)). It is
14 undisputed that the investment and delivery of CMS securities is controlled by the terms and conditions
15 of the convertible note (#37, Ex. A). The convertible note also provides how and when securities were
16 to be to delivered to plaintiffs and provides that repayment of the $250,000 from defendant CMS is due
17 on September 30, 2011, unless plaintiffs elected to convert the obligation to common stock in CMS.
18 *Id.* To do this, the note required the plaintiffs to deliver the convertible note to CMS or verify why the
19 note could not be delivered. *Id.*

20 Plaintiffs' position is that defendants are not entitled to attorney's fees because the plaintiffs
21 never sought to enforce the terms of the note, and principally rely on two cases in support of that view.
22 *First Commercial Title v. Holmes,* 92 Nev. 363, 550 P.2d 1271 (1976) concerned an action seeking to
23 enjoin an impending trustee's sale based upon a due-on sale provision of a deed of trust.  The trial court
24 awarded attorney's fees based upon language in the promissory note, which secured the deed of trust.
25 In reversing the trial court, the Supreme Court held, "This action, of course, was not instituted by
26 respondent for the purpose of collecting on the note but was instituted by appellant to enjoin the trustee's
27 sale;" therefore, the promissory note did not control. 92 Nev. at 366, 550 P.2d at 1272.

28

In contrast to *First Commercial Title,* plaintiffs filed this action to enforce the convertible note and sought relief pursuant to the note's terms and conditions, which the District Court clearly found to be so when it stated that this action arose from a $250,000 investment the plaintiffs made in CMS, which was memorialized by the note at issue. *See* #35 at p. 2.

Plaintiffs next cite *Stitt v. Williams,* 919 F.2d 516 (9th Cir. 1990) for the proposition that defendants cannot recover attorney's fees because plaintiffs brought this action, not to enforce the convertible note, but to collect on damages based upon allegedly fraudulent conduct. *Stitt* concerned a suit brought against a general partner for allegedly defrauding appellants during his management of a number of limited partnerships in which the appellants were limited partners.

The Ninth Circuit agreed in part with the district court that the appellees were not entitled to attorney's fees based upon the attorney's fees provision in certain of the limited partnership agreements, since "'the federal claims on which [appellees] prevailed were not sufficiently tied to the partnership agreement to warrant the award of fees under the contractual provision for attorneys' fees.'" *Id.* at 529. However, the court made a distinction between the two different attorney's fees provisions found in the various agreements. The court held that the following attorney's fee provision was not enforceable:

> In the event litigation is commenced to enforce this agreement, the parties hereto agree that the prevailing party in such litigation shall be entitled to reasonable attorneys' fees and other costs and expenses, to be fixed by the court as part of the costs of said action, whether such litigation proceeds to judgment or not.

*Id.* However, the court held that an attorney's fees provision in one of the limited partnership agreements was enforceable:

> In any action between the parties to enforce any of the terms of this Agreement or of any other contract relating to the Partnership, or in an action in any other way pertaining to Partnership affairs or this Agreement, the prevailing party shall be entitled to recover expenses, including reasonable attorney's fees.

*Id.* at 530.

The attorney's fees provision in the convertible note at issue here provides:

> If any legal action or other proceeding is brought for the enforcement of this Convertible Note, the prevailing party or parties shall be entitled to

5

>recover reasonable attorneys' fees or other costs incurred in connection with such action or proceeding and in any petition for appeal or appeal there from, in addition to any other relief to which it or they may be entitled.

(#37, Ex. A). Although the attorney's fee provision in the convertible note is not as expansive as the second attorney's provision discussed in *Stitt,* it is likewise not as narrow as first provision the Ninth Circuit found to be unenforceable. Thus, the court must decide under the particular facts of this case whether the provision is enforceable.

This court finds the language of the District Court's order dismissing plaintiffs' case instructive. The District Court initially stated in its order that "[t]his cases arises out of a $250,000 investment" and that the "investment is memorialized in the form of a Convertible Note ("Note")" (#35). The District Court then recounted in detail the terms of the convertible note, as well as the events that precipitated this action. *Id.* The District Court's analysis of plaintiffs' federal securities fraud claims appears to hinge on the underlying transaction; that is, the convertible note.

This court surmises that the District Court implicitly recognized that the terms and conditions of the convertible note governed the relationship between plaintiffs and defendants, and that all of their claims were inextricably tied to the claims alleged in the complaint. In fact, the District Court states that it "has considered the Note attached to the motions because the agreement is referred to in the Complaint, it forms the basis of Plaintiffs' claims, and Plaintiffs have not challenged the authenticity of the document" (#35, n. 2). This is so, notwithstanding that plaintiffs' complaint appears drafted to avoid any overt allegation of a breach of the convertible note, presumably to avoid the attorney's fees provision in the event they did not prevail in the action. The court agrees with defendants that in filing the complaint and in requesting delivery of the CMS securities, plaintiffs asked for relief controlled by the convertible note, and they were attempting to enforce the terms of the convertible note; therefore, the attorney's fees provision is enforceable.

### B.     *Attorney's Fees pursuant to Section 11(e) of the Securities Act of 1933*

Section 11(e) of the 1993 Act provides that the district court has discretion to award attorney's fees if it "believes the suit or defense to have been without merit . . . ." 15 U.S.C. § 77k(e); *Western*

*Federal Corp. V. Erickson,* 739 F.2d 1439, 1444 (9th Cir. 1984). Fees may be awarded under section 11(e) if the claim or defense "borders on the frivolous or is brought in bad faith." *Stitt v. Williams,* 919 F.2d 516 at 530 (quoting *Erickson,* 739 F.2d at 1444).

Defendants contend that plaintiffs' federal securities claims, which were the centerpiece of their complaint, were without merit and frivolous, and they point to the language of the convertible note, which expressly states that the "Convertible Note and any securities acquired" thereunder have not been registered and were exempted under the 1933 Act and are subject to SEC Rule 144. Specifically, in the first and fourth claims for relief, plaintiffs alleged that defendants made false and misleading statement in violation of the 1933 Act, the 1934 Act, and SEC Rule 10b-5 (#2). In their fourth claim for relief, plaintiffs alleged violations of sections 5 and 12 of the 1933 Act based on defendants' "unauthorized creation and subsequent sale of unregistered securities." *Id.*

Once again, the District Court's analysis of these claims is instructive (#35). As to the first claim for relief, the District Court found:

> Plaintiffs' Complaint does not adequately or properly state a claim of federal securities fraud. Plaintiffs generally allege that they were misled in a number of ways related to how their investment was to be used, but none of the allegations rise to the level of specificity required under the PSLRA. Plaintiffs also allege that 'Defendants acted with *scienter* and were willful, malicious, and greedy in their conduct.' However, this type of conclusory allegation, unaccompanied by specific facts, is insufficient to create a strong inference that any of the Defendants acted with *scienter*. . . . Moreover, in their opposition, Plaintiffs fail to address any of the PLSRA deficiencies of their Complaint that were raised by Defendants. Accordingly, Plaintiffs' securities fraud claims against Defendants must be dismissed.

(#35, p. 5) (citations omitted).

With regard to plaintiffs' fourth claim for relief alleging the unregistered sale of securities, the District Court concluded:

> Sections 5 and 12 do not apply to private offers of sales of securities, like [those] involved in this case. Thus, Defendants contend that the alleged securities sold to Plaintiffs are exempt from registration under the private offering exemption of the 1993 Act. In their Complaint, Plaintiffs have alleged no facts to infer that their transaction amounts to a public offering. Additionally, in their Opposition, Plaintiffs do not dispute that the alleged securities at issue are exempt from registration as a private

7

> offering. Accordingly, the Court finds that Defendants cannot be held
> liable for the offer and sale of unregistered securities.

*Id.* at 6 (citations omitted). The District Court considered the terms of the convertible note (#35, p.2, n. 2), which plainly states that the "Convertible Note and any securities" acquired thereunder have not been registered and were exempted under the 1933 Act and are subject to SEC Rule 144 (#37, Ex A). Despite the convertible note's clear terms, plaintiffs alleged in their first and fourth claims for relief that the defendants made false and misleading statements in violation of the 1933 Act, the 1934 Act, and SEC Rules 10b-5 (#2). In their fourth claim for relief, plaintiffs also alleged violations of section 5 and 12 of the 1933 Act based on defendants' "unauthorized creation and subsequent sale of unregistered securities." *Id.* The terms of the convertible note are plain, and plaintiffs had no viable basis for claims for relief based on federal securities fraud. Moreover, the District Court expressly noted that plaintiffs failed to address any of the PLRSA deficiencies in their opposition, nor did they dispute that the alleged securities are exempt from registration as a private offering (#35 at p. 5). Finally, the District Court observed that plaintiffs did not seek leave to amend their securities fraud claims, which suggests that they understood those claims were without merit. *Id.* at 8.

Based upon the foregoing, this Court finds pursuant to Section 11(e) of the 1993 Act, that plaintiffs' claims were without merit and frivolous, and an award of attorney's fees is proper.

### *C.     Analysis of defendants' attorney's fees and costs*

When a party is entitled to attorney's fees, Local Rule 54-16(b)-(c) ("LR 54-16) outlines the requirements for the itemization and summary of legal services rendered and costs incurred, as well as the affidavit of counsel authenticating the information provided. Defendants' counsel supplied his affidavit, a summary billing statement, and an itemization of costs (#37, Ex. B & C), and the court now considers this fee application.

#### *1.     The results obtained and the amount involved – LR 54-16 (b)(3)(A)*

The court has reviewed plaintiffs' thirty-eight page complaint, which contains sixteen claims for relief and which sought an eight-figure damage award (#2). The defendants obtained an order dismissing the federal securities and racketeering claims, which were dismissed with prejudice, and the District

8

Court refused to exercise supplemental jurisdiction over plaintiffs' state law claims (#35). Thus, defendants prevailed on every issue and at the earliest stages of the action. This factor weighs in favor of defendants.

### 2. *The time and labor required – LR 54-16(b)(3)(B)*

In the ten months after plaintiffs filed their complaint, defendants' counsels' time sheets reflect that they reviewed the complaint, prepared motions to dismiss and replied in support of that motion, researched and opposed plaintiffs' motion to allow discovery and stay the proceedings, and made oral argument at a hearing on the discovery matters. Attorney hours are broken down as follows:

| | |
|---|---|
| Partner Daniel Hayward | 43.0 |
| Associates Michael Large & Holly Parker | 84.6 |
| Legal Intern Justin Vance | 3.2 |
| Total | 130.8 |

The court has reviewed the defendants' counsels' billing statements (#37, Ex. B), plaintiffs' opposition (#41), and plaintiffs' complaint (#2). Plaintiffs' thirty-eight page complaint not only contained sixteen claims for relief which defendants had to address; it is often difficult to understand and contains angry diatribe that serves only to distract from plaintiffs' claims and the court's understanding of the case. Plaintiffs sought an eight-figure damage award, which in itself compelled defendants' counsel to thoroughly review each claim and defendants' potential liability, as well as possible defenses. That the District Court did not characterize this action as complex and that it declined to exercise supplemental jurisdiction over state law claims is of no moment; defendants' counsel had to address each claim that plaintiffs alleged. Having reviewed the billing statement and considered the legal services performed and the result obtained, this factor weighs in favor of defendants.

### 3. *The novelty and difficulty of the questions involved – LR 54-16(b)(3)(c)*

Plaintiffs filed a rambling thirty-eight page complaint that is difficult to distill, yet includes relatively complex securities fraud claims under the 1993 Act, the 1934 Act, and civil RICO. The complaint also included a "kitchen sink" of state law claims, all of which required analysis and review. Plaintiffs who elect to file such complaint do so at their peril because it requires defendants to expend significant attorney time deciphering the claims. This factor weighs in favor of defendants.

4.  *The requisite skill to perform the legal services properly – LR 54-16(b)(2)(D)*

Defendants' counsel possess the requisite skill to perform legal services, and this factor weighs in favor of defendants.

5.  *The preclusion of other employment by the attorney due to the acceptance of this case – LR 54-16(B)(2)(E)*

Plaintiffs' complaint required defendants' counsel to devote substantial time to analyze each of the claims alleged, which necessarily precluded defendants' counsel from providing legal service to other clients, but the scope of the work was not overly time consuming. This factor does not weigh for or against plaintiffs or defendants.

6.  *The customary fee – LR 54-16(b)(2)(F)*

The court finds the following hourly rates of defendants counsel to be equal to, or below, the market rate for attorneys in northern Nevada performing legal services in cases involving securities fraud and RICO allegations: $250.00 for partner; $175.00 for associates; and $100.00 per hour for legal intern. This factor weighs in favor of defendants.

7.  *Whether the fee is fixed or contingent – LR 54-16(b)(2)(G)*

Defendants' counsel charged defendants at a fixed hourly rate, which does not weigh for or against the parties.

8.  *The time limitations imposed by the client or the circumstances – LR 54-16(b)(2)(H)*

This factor does not apply.

9.  *The experience, reputation, and ability of the attorneys – LR-54-16(b)(2)(I)*

Defendants' counsel possess the knowledge and experience to defend a securities fraud case, and the law firm of Laxalt & Nomura is a civil litigation law firm whose attorneys appear regularly in federal court. This factor weighs in favor of defendants because the court finds that defendants' counsel engaged in efficient, effective use of legal resources to obtain a dismissal of this action.

10. *The undesirabilty of this case – LR 54-16(b)(2)(J)*

This factor is not relevant.

   11.   The nature and length of professional relationship with the client – LR 54-16(b)(2)(K)

Defendants' counsel reports that this is the first opportunity the firm has had to represent these defendants, and this factor is not relevant.

   12.   Awards in similar cases – LR54-16(b)(2)(L)

Defendants do not have information concerning similar awards as it concerns attorney's fees and costs for securities and civil RICO litigation; therefore, this factor is not considered.

**III.   Conclusion**

Based upon the foregoing, the court finds that defendants' motion for an award of attorney's fees in the amount of $22,872.96 to be reasonable. The court also finds reasonable defendants itemization of costs in the amount of $1,568.06, for a total of $24,441.02. The court **GRANTS** defendants' motion for attorneys' fees and costs (#37).

**IT IS SO ORDERED.**

DATED:   July 1, 2008.

_____
UNITED STATES MAGISTRATE JUDGE